## CIRCUIT COURT OF FAIRFAX COUNTY

Richter, Alexander & Widder

    v.

Pasquale M. Palumbo, Jr., et al.

January 4, 1988

Case No. (Law) 73165

By JUDGE THOMAS A. FORTKORT

Paul S. Richter is an attorney residing in Virginia whose practice is largely in the District of Columbia. Richter is a specialist in tax and patent matters.

Dr. P. M. Palumbo is a well-known orthopaedic surgeon in northern Virginia. Mr. Richter and Dr. Palumbo have been friends since the early seventies, and Dr. Palumbo has retained Mr. Richter for several matters for approximately ten years.

The current suit involves non-payment of legal fees by Dr. Palumbo for work Mr. Richter claims he has done on Dr. Palumbo's behalf.

Dr. Palumbo, in addition to being an orthopaedic surgeon, has been an inventor of various orthotic devices, three of which have been patented. It is in connection with these devices that Mr. Richter was hired by Dr. Palumbo and which results in the current dispute.

Dr. Palumbo first hired Mr. Richter to do some tax work which was apparently concluded with a satisfactory result. Thereafter, Dr. Palumbo came to Mr. Richter with his knee brace and requested that Mr. Richter attempt to have the device patented. Later, Dr. Palumbo gave Mr. Richter two other patent applications for an ankle brace and a second knee brace. After obtaining a patent for the Dynamic Patellar Brace, Dr. Palumbo noticed a competing

device at a trade show. This device was produced by a manufacturer known as Don Joy, a California company. After his return from the trade show, Dr. Palumbo contacted Mr. Richter about a patent infringement suit against Don Joy. During the course of this suit, the U. S. District Court, Judge Keap presiding, found summary judgment in favor of Don Joy and assessed damages for a frivolous motion against Dr. Palumbo. This ruling was later overturned by other counsel on appeal and eventually was settled with a judgment in favor of Dr. Palumbo in the amount of $25,000.00. The entry of the Summary Judgment resulted in Dr. Palumbo's discharge of Mr. Richter and this subsequent suit for legal fees.

Mr. Richter claims he expended the time claimed on matters for Dr. Palumbo, that his fees were reasonable within the legal profession and his patent specialty, and that he is entitled to judgment in the amount claimed.

Dr. Palumbo alleges that Mr. Richter took his case on a contingent fee basis, that his hours claimed are fraudulent, that Mr. Richter was inexperienced in patent infringement cases, that he abandoned Dr. Palumbo as his client, and that his bookkeeping methods were shoddy and his billings lack credibility.

The Court finds that Mr. Richter's quoted rates are fair and reasonable.

The Court finds that Mr. Richter has the necessary experience, ability, and educational background to conduct this relatively simple patent infringement case.

The Court finds that Mr. Richter did not abandon Dr. Palumbo but did advise him on a timely basis of the events in the matters he was pursuing on behalf of Dr. Palumbo.

The Court finds that Mr. Richter's bookkeeping practices were shoddy, unprofessional, lacking in confidence and that he failed to keep his client informed of his charges in a timely manner and in direct violation of the letter which he says embodies the oral fee agreement of the parties.

Dr. Palumbo produced evidence to indicate a contingent fee agreement between the parties. That evidence combined with Mr. Richter's failure to bill at any regular interval and his fixed fee arrangement on the patent prosecution work leads the Court to believe that either a contingent

fee agreement or a variation of the result obtained or value billing was the true status of the attorney client fee relationship. At any rate, it was the burden of the plaintiff Richter to establish a contract between the parties by a preponderance of the evidence and to this extent his claim must fail.

Richter argues that if a contract between the parties is not established, he is entitled to an award in quantum meruit for the work he performed on Dr. Richter's behalf. The Court concurs that Richter is entitled to some compensation for his services. Despite the unfortunate episode involving the granting of a motion for summary judgment due to an erroneous interpretation of the law by the trial court, the Court feels that the patent infringement case was conducted within the parameters of acceptable effort by trial counsel.

Richter often promised more than he delivered, but there is little evidence to suggest that he was derelict in his duties or abandoned his client. Richter's promises were no doubt an expression of his desire to serve Dr. Palumbo in an exemplary fashion. To hold Richter to every act promised would be unreasonable and would establish a standard of conduct well beyond that produced by the average attorney. Richter's work was plainly acceptable within the context of the normal activities and duties of a trial counsel.

Richter's great failing in this case was the matter of billing. If he had an hourly contract with Palumbo, there is no suggestion of that contract in his billing practices. Further, while he has access to the remedy of quantum meruit, that remedy does not relieve him of the burden of proving his case by a preponderance of the evidence.

The main document to support Richter's claim is plaintiff's Exhibit 178. According to Richter that document is a recapitulation of scraps of paper on which he wrote the hours worked on the Palumbo matters contemporaneously with the performance of the work. The underlying scraps of paper were never produced. Palumbo was able to demonstrate that on numerous instances, the hours claimed did not conform to the hours recorded by Mr. Alexander, Richter's partner, for the same work incidents. Comparison with the work product often yielded hourly totals that

did not seem to correspond to the work performed. Despite the numerous discrepancies, it is clear that Richter performed a large amount of legal work on the *Don Joy* case, and no serious challenge was mounted as to the necessity of the various documents produced by Richter. The Court is left with a proposition not dissimilar to a case involving the building of a house. The standing house itself is proof of a large amount of labor expended, but the carpenter's bare averment that the house cost x dollars to build, in face of the defendant's adamant denial, leaves the Court little with which to assess the amount of labor expended therein.

Richter has produced solid proof of monies he expended on behalf of Dr. Palumbo for his European patents. These expenses total $8,030.23 and Richter is awarded that expense. From all the other data presented, the oral testimony of the parties, the work product evidence, the Court concludes the reasonable value of the work expended in the *Don Joy* case, to be $20,000.00. The Court finds the expenses paid by the firm in the *Don Joy* case to be $10,378.34. Additionally, patent expenses of $220.00 for the dynamic ankle brace and $142.00 for the knee brace are also assessed against Dr. Palumbo.

Finally, the Court awards Richter a total of $3,550.00 for work performed on the patent prosecutions of the ankle brace and for local work in connection with the European patents on the dynamic patellar brace.

The total of these amounts of $42,320.57, and judgment is rendered to Richter in that amount with interest to run from the date of suit.